IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

JEFFREY R. BELL,

        Plaintiff,

vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

No. C10-2059

RULING ON JUDICIAL REVIEW

## TABLE OF CONTENTS

I.  INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.  PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.  PRINCIPLES OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV.  FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    A.  Bell's Education and Employment Background . . . . . . . . . . . . . . 5
    B.  Administrative Hearing Testimony . . . . . . . . . . . . . . . . . . . . . 5
        1.  Bell's Testimony . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
        2.  Vocational Expert Testimony . . . . . . . . . . . . . . . . . . . . 6
    C.  Bell's Medical History . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

V.  CONCLUSIONS OF LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
    A.  ALJ's Disability Determination . . . . . . . . . . . . . . . . . . . . . . 12
    B.  Objections Raised By Claimant . . . . . . . . . . . . . . . . . . . . . . 14
        1.  Listing 1.04(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
        2.  RFC Assessment . . . . . . . . . . . . . . . . . . . . . . . . . . 16
        3.  Credibility Determination . . . . . . . . . . . . . . . . . . . . . 17

VI.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

VII.  ORDER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 1) filed by Plaintiff Jeffrey R. Bell on September 27, 2010, requesting judicial review of the Social Security Commissioner's decision to deny his applications for Title II disability insurance benefits and Title XVI supplemental security income ("SSI") benefits. Bell asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide him disability insurance benefits and SSI benefits. In the alternative, Bell requests the Court to remand this matter for further proceedings.

## II. PROCEDURAL BACKGROUND

On May 25, 2006, Bell applied for both disability insurance benefits and SSI benefits. In his applications, Bell alleged an inability to work since May 1, 2005 due to three back surgeries, pain from his hip to his left ankle, depression, and problems with his right hand. Bell's applications were denied on September 5, 2006. On December 6, 2006, his applications were denied on reconsideration. On December 19, 2006, Bell requested an administrative hearing before an Administrative Law Judge ("ALJ"). On October 3, 2008, Bell appeared via video conference with his attorney before ALJ Marilyn P. Hamilton for an administrative hearing. Bell and vocational expert Marian S. Jacobs testified at the hearing. In a decision dated December 30, 2008, the ALJ denied Bell's claims. The ALJ determined that Bell was not disabled and not entitled to disability insurance benefits or SSI benefits because he was functionally capable of performing other work that exists in significant numbers in the national economy. Bell appealed the ALJ's decision. On July 22, 2010, the Appeals Council denied Bell's request for review. Consequently, the ALJ's December 30, 2008 decision was adopted as the Commissioner's final decision.

On September 27, 2010, Bell filed this action for judicial review. The Commissioner filed an Answer on November 30, 2010. On December 29, 2010, Bell filed a brief arguing that there is not substantial evidence in the record to support the ALJ's finding that he is not disabled and that he could perform other work that exists in

significant numbers in the national economy. On February 28, 2011, the Commissioner filed a responsive brief arguing that the ALJ's decision was correct and asking the Court to affirm the ALJ's decision. On March 11, 2011, Bell filed a reply brief. On November 18, 2010, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

## III. PRINCIPLES OF REVIEW

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review. 42 U.S.C. § 405(g). Pursuant to 42 U.S.C. § 1383(c)(3), the Commissioner's final determination after an administrative hearing not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3). 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court will "affirm the ALJ's decision if it is supported by substantial evidence on the record as a whole." *Gates v. Astrue*, 627 F.3d 1080, 1082 (8th Cir. 2010) (citation omitted). Evidence is "substantial evidence" if a reasonable person would find it adequate to support the ALJ's determination. *Id.* (citing *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)); *see also Wildman v. Astrue*, 596 F.3d 959, 963-64 (8th Cir. 2010) ("'Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.' *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000).").

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that

detracts from his or her decision. *Moore v. Astrue*, 623 F.3d 599, 602 (8th Cir. 2010); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Casey v. Astrue*, 503 F.3d 687 (8th Cir. 2007), the Eighth Circuit further explained that a court "will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 691 (citations omitted). "A decision is not outside that 'zone of choice' simply because [a court] may have reached a different conclusion had [the court] been the fact finder in the first instance." *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006). Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams*, 393 F.3d at 801 (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Wildman*, 596 F.3d at 964 ("If substantial evidence supports the ALJ's decision, we will not reverse the decision merely because substantial evidence would have also supported a contrary outcome, or because we would have decided differently."); *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005).").

## IV. FACTS

### A. Bell's Education and Employment Background

Bell was born in 1961. He attended school through the twelfth grade, but did not graduate. He has not earned a GED. At the hearing, Bell testified that he is able to read, write, speak, and understand the English language. He also indicated that he has the ability to perform basic math equations.

The record contains a detailed earnings report for Bell. The report covers Bell's employment history from 1977 to 2008. Between 1977 and 2004, Bell earned between $132.00 (1999) and $33,829.87 (1996). In 2005, he earned $5,720.23. He has no earnings since 2006.

### B. Administrative Hearing Testimony

#### 1. Bell's Testimony

At the time of the administrative hearing, the ALJ inquired why Bell believed he was unable to work. Bell explained that prior to May 1, 2005, his alleged disability onset date, he strained his back while changing the brakes on a semi tractor-trailer, and subsequent to that injury, the pain in his back got progressively worse. Specifically, Bell described his back pain as follows:

> A:    I have problems in the middle of my back. They put cages in my back and I have problems [] right in the middle of the back where they fused the cages to my bone. I can't stand for very long or walk. Sit in one place very long. When I sleep at night I go from my bed to the couch to maybe a chair. . . .
>
> Okay. The pain I have now is in the middle of my back. I -- basically I have it all the time. I can't sleep in one area very long. I usually lay in bed maybe an hour at the most and I will get up and move to the couch or maybe move to a chair and try to sleep wherever it's comfortable. I find it hard to walk my dog. Maybe I'll walk him two or three houses down and it'll start to hurt so I turn around and go right back

home. If I sit for very long in one area or ride in a car
it will hurt. Just in a matter of miles.

(Administrative Record at 38-39.) Additionally, Bell described his back pain as "stabbing
pain" that runs down into his hip area.

The ALJ also asked Bell to discuss his functional abilities:

Q: Okay. And how long are you able to sit at one time?
A: Approximately maybe 40 minutes.
Q: And how long are you able to stand at one time?
A: Maybe 20 minutes.
Q: How long are you able to walk at one time?
A: That would be maybe about a half a block and then turn
   around and come back.
Q: So a block total?
A: Yes, ma'am.
Q: Okay. What's the heaviest weight that you lift and/or
   carry now?
A: Maybe less than five pounds. I'm really restricted not
   to lift anything over seven to 10 pounds right now with
   my back.

(Administrative Record at 49.)

### 2. *Vocational Expert Testimony*

At the hearing, the ALJ provided vocational expert Marian S. Jacobs with a
hypothetical for an individual who:

> could do light work . . . [and] is limited in push and pull to
> occasionally with the left lower extremity. Can never climb
> ropes, ladders, scaffolds as part of the job. Occasionally can
> climb ramps and stairs. Occasionally balance, stoop, kneel,
> crouch and crawl. . . . Avoid concentrated exposure to
> extreme cold and to humidity. . . . And avoid concentrated
> exposure to hazards such as moving machinery and unguarded
> heights. In addition, the person's able to do only simple,
> routine, repetitive work with simple work related decisions and
> few workplace changes. Only occasional contact with the
> public, coworkers and supervisor.

(Administrative Record at 62-63.) The vocational expert testified that under such
limitations, Bell could not perform his past relevant work. The vocational expert further

testified that Bell could perform the following work: (1) surveillance system monitor (110 positions in Iowa and 25,000 positions in the nation), and (2) laundry folder (450 positions in Iowa and 35,000 positions in the nation). The ALJ asked a second hypothetical which was identical to the first hypothetical except that instead of having the ability to perform light work, the individual would be able to perform sedentary work. The vocational expert testified that under such limitations, Bell could not perform his past relevant work, but could perform the following work: (1) addresser (245 positions in Iowa and 25,000 positions in the nation), and (2) document preparer (1,500 positions in Iowa and 142,000 positions in the nation). Lastly, when asked by the ALJ if the individual was limited in that he or she was unable to perform at a consistent pace due to pain, the vocational expert responded that under such circumstances, the individual would be precluded from competitive employment.

Bell's attorney also questioned the vocational expert. Bell's attorney provided the following hypothetical to the vocational expert:

> [Y]ou have an individual with the same background information but his lifting restrictions would be 10 pounds occasionally, less than 10 pounds frequently, sit for a maximum of 40 minutes at a time, stand for a maximum of 20 minutes at a time with alternating sitting and standing at will. No operating heavy machinery or anything where hazards are involved due to the narcotic pain medication. And a moderate impairment in concentration [(the inability to concentrate up to a third of the workday)].

(Administrative Record at 66.) The vocational expert testified that under such limitations, Bell would be precluded from competitive work.

### C. Bell's Medical History

On June 15, 2006, at the request of Disability Determination Services ("DDS"), Bell met with Dr. Kristine M. Conditt, Ph.D., for a psychodiagnostic disability examination. In discussing Bell's medical history, Dr. Conditt noted that between 1994 and 2004, Bell had three back surgeries. Dr. Conditt further noted that Bell "has pain all of the time, which worsens if he stands or bends or walks too much. . . . He does some

light laundry or dishes, sits for awhile, and then tries to go back to it to finish."[1] As a result of his back problems, Bell developed depression and anger issues. His typical routine includes:

> making the bed with his wife and getting some light laundry done. He fixes very simple food for himself or his wife makes it. He goes to his mother's house to visit and/or watch television. . . . He showers at night because it feels good on his back after the day's activities. He does little things around the house and reads the paper. He walks as much as he can, usually to the end of the block and back and around the house. He does not vacuum. He does some dusting if he just does one room at a time. He does some laundry while taking frequent breaks. He does a little dishes at a time with frequent breaks. . . .

(Administrative Record at 315.) Upon examination, Dr. Conditt diagnosed Bell with major depressive disorder, multiple back injuries, arm and hand injuries, and loss of ability to do previously enjoyed activities. In conclusion, Dr. Conditt opined that:

> As far as ability to understand instruction, procedures and locations, [Bell] would likely do well.
>
> As far as ability to carry out instructions, maintain concentration and pace, most of the limitations would be due to his back and arm problems and pain. His depression would likely improve if he had meaningful or enjoyable work to do. He is very depressed about not being able to contribute much to others both through work and at home. With his current depression, he would likely have some problems with concentration and motivation.
>
> As far as ability to interact appropriately with supervisors, co-workers, and the public, he would likely do well until/unless he felt frustrated about something that he could not do and became irritable. That is happening a lot at home but less likely to happen at work. He said he would probably just hold it in and then take it out on someone else through his irritability at home.

---

[1] *See* Administrative Record at 314.

> As far as ability to use good judgment and respond
> appropriately to changes in the work place, the depression may
> interfere some with this. Otherwise, he would likely have the
> ability to do so.

(Administrative Record at 316-17.)

On July 3, 2006, Dr. Sandra Davis, Ph.D., reviewed Bell's medical records and provided DDS with a Psychiatric Review Technique and mental residual functional capacity ("RFC") assessment for Bell. On the Psychiatric Review Technique assessment, Dr. Davis diagnosed Bell with depressive syndrome. Dr. Davis determined that Bell had the following limitations: mild restriction of activities of daily living, mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. On the mental RFC assessment, Dr. Davis determined that Bell was moderately limited in his ability to: carry out detailed instructions, maintain attention and concentration for extended periods, work in coordination with or proximity to others without being distracted by them, and respond appropriately to changes in the work setting. Dr. Davis concluded that Bell's "medically determinable impairment would be considered severe, posing some moderate limitations with respect to sustaining concentration, adapting to change and relating to others without irritability."[2]

On July 19, 2006, Bell met with Robert M. Welshons, PA-C, for a disability determination examination. In discussing Bell's medical history, Welshons noted that Bell had a herniated disc which was causing him back pain and left leg radiculopathy, and a history of three previous herniated discs. Bell reported that he could:

> walk about one block before he is limited by discomfort.
> Activity such as doing dishes causes a gradual worsening of
> symptoms because of the standing involved. He can sit
> perhaps for one to two hours at a time. He can drive for
> approximately two hours, then has to stop and get out and
> walk around his vehicle.

---

[2] *See* Administrative Record at 321.

(Administrative Record at 340.) Upon examination, Welshons diagnosed Bell with back pain, herniated disc, and decreased use of the right elbow.[3] Welshons concluded that:

> Currently [Bell's] symptoms do limit him, and he has a current weight restriction to 10 pounds which seems reasonable. He does show neurological compromise into his left leg. He has sought medical treatment for his symptoms but is not maximizing his possible treatment at this point. . . .

> Given his history, even if he were to undergo another discectomy and have complete resolution of symptoms, he would be well-advised to not continue in positions requiring a lot of physical exertion about. He can sit for only periods of time up to an hour or two. He would have no troubles with speaking or hearing. He would have little if any problems with handling objects. He does have limited use of his right elbow. He should not be stooping, kneeling or crawling. He has no restrictions to work environments regarding dust, fumes, temperatures or other hazards.

(Administrative Record at 341.)

On September 5, 2006, Dr. Mary Greenfield, M.D., reviewed Bell's medical records and provided DDS with a physical RFC assessment for Bell. Dr. Greenfield determined that Bell could: (1) occasionally lift and/or carry 20 pounds, (2) frequently lift and/or carry 10 pounds, (3) stand and/or walk with normal breaks for at about six hours in an eight-hour workday, (4) sit with normal breaks for a total of about six hours in an eight-hour workday, and (5) push and/or pull without limitations. Dr. Greenfield also determined that Bell could occasionally climb, balance, stoop, kneel, crouch, and crawl. Dr. Griffith found no manipulative, visual, communicative, or environmental limitations.

On November 15, 2006, Bell was referred to Dr. Redouane Goulmamine, M.D., for complaints of low back pain and left leg pain. Upon examination, Dr. Goulmamine diagnosed Bell with lumbago, lumbosacral spondylosis without myelopathy, and lumbar

---

[3] Welshons pointed out that Bell's medical history includes a problem with his right arm. Bell fractured his elbow when he was 7, and it did not heal properly. As a result, Bell is not able to fully extend his right elbow. *See* Administrative Record at 340.

disc disease without myelopathy. Dr. Goulmamine opined that Bell "does have symptoms of acute L5-S1 radiculopathy." Dr. Goulmamine ordered an MRI and EMG to learn more information. On November 28, 2006, Dr. Goulmamine reviewed the MRI and EMG findings with Bell. Dr. Goulmamine noted that the MRI and EMG showed chronic left S1 radiculopathy, posterolateral disc herniation at L5-S1 with impingement of the left S1 nerve root pressing that level, broad-based disc bulge with possible acute tear in the annulus at L3-4 producing a mild to moderate central stenosis, and loss of disc space at L4-5. Dr. Goulmamine recommended a left S1 nerve root block injection as treatment.

On December 6, 2006, Dr. James D. Wilson, M.D., reviewed Bell's medical records and provided DDS with a physical RFC assessment for Bell. Dr. Wilson determined that Bell could: (1) occasionally lift and/or carry 20 pounds, (2) frequently lift and/or carry 10 pounds, (3) stand and/or walk with normal breaks for at about six hours in an eight-hour workday, (4) sit with normal breaks for a total of about six hours in an eight-hour workday, and (5) push and/or pull without limitations. Dr. Wilson also determined that Bell could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. Dr. Wilson found no manipulative, visual, communicative, or environmental limitations.

On September 18, 2007, Bell visited Dr. Caple A. Spence, M.D., complaining of back pain radiating to his left lower leg. Bell reported a back pain level of 9 out of 10 with 10 being the most severe, and left leg pain of 10 out 10. Dr. Spence diagnosed Bell with left S-1 radiculopathy, left L5-S1 disk herniation with lateral recess stenosis, L4-5 bilateral lateral recess stenosis, lumbago, and degenerative collapse at L4-5. Dr. Spence recommended anterior lumbar interbody fusion at L4-5, L5-S1, and a left L5-S1 laminectomy and discectomy as treatment. On October 3, 2007, Bell underwent back surgery as recommended by Dr. Spence.

On November 5, 2007, at a surgical follow-up appointment, Bell informed Lynn Galloway, PA-C, that he was "doing well." Bell rated his back pain at 4 out of 10, and reported no pain in his left leg. Bell stated that he was walking 30 to 45 minutes every

day, and claimed that he was "getting better." At another follow-up appointment, on January 8, 2008, Bell reported that his back pain was "getting better," but he still had some pain which rated at 6 out of 10. On April 28, 2008, Bell reported that his back pain was getting worse and he rated the pain at 8 out of 10. Bell also indicated that his pain was worse with activity. On August 9, 2008, Bell reported that "in general he is doing well." He complained of occasional soreness, stiffness, and aching in his low back, particularly associated with activity. On January 13, 2009, Bell reported that he had "persistent low back pain, same as he had before surgery--although slightly better."[4] Bell stated that he had difficulty standing more than 10 to 15 minutes. He also stated that his back pain made sleeping difficult. Bell was diagnosed with degenerative disc disease and lumbar stenosis at L4-L5 and L5-S1.

## V. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Bell is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The five steps an ALJ must consider are:

> (1) whether the claimant is currently engaged in any substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Appendix"); (4) whether the claimant can return to [his or] her past relevant work; and (5) whether the claimant can adjust to other work in the national economy.

*Moore*, 572 F.3d at 523 (citing 20 C.F.R. § 404.1520(a)(4)(i)-(v)). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575,

---

[4] *See* Administrative Record at 514.

577 (8th Cir. 2006) (citing *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005), in turn quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)).

In order to establish a disability claim, "[t]he claimant bears the burden of demonstrating an inability to return to [his or] her past relevant work." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (citing *Steed v. Astrue*, 524 F.3d 872, 875 n.3 (8th Cir. 2008)). If the claimant meets this burden, the burden of proof then shifts to the Commissioner to "show [that] the claimant is capable of performing other work." *Id.* In order to show that a claimant is capable of performing other work, the Commissioner must demonstrate that the claimant retains the residual functional capacity ("RFC") to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998) (citing *Reed v. Sullivan*, 988 F.2d 812, 815 (8th Cir. 1993)). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. §§ 404.1545, 416.945. "'It is the ALJ's responsibility to determine [a] claimant's RFC based on all the relevant evidence, including medical records, observations of treating physicians and others, and [the] claimant's own description of her limitations.'" *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (quoting *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007)); 20 C.F.R. §§ 404.1545, 416.945.

The ALJ applied the first step of the analysis and determined that Bell had not engaged in substantial gainful activity since May 1, 2005. At the second step, the ALJ concluded from the medical evidence that Bell had the following severe combination of impairments: obesity, degenerative disc disease of the lumbar spine, polysubstance use in recent remission, and depressive disorder. At the third step, the ALJ found that Bell did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Bell's RFC as follows:

> [Bell] has the residual functional capacity to perform sedentary work . . . in that [Bell] is capable of carrying/lifting ten pounds occasionally and less than ten pounds frequently, can

sit for six hours of an eight hour day, can stand/walk for two hours of an eight hour day, but can push/pull only occasionally with his left lower extremity, i.e., in operating foot pedals. [Bell] can occasionally climb ramps/stairs, bend, balance, stoop, kneel, crouch, and crawl, but never climb ropes, ladders, and scaffolds. [Bell] should avoid concentrated exposure to hazards, such as fast and dangerous machinery and unprotected heights; to extreme cold; and to humidity. He is capable of simple routine repetitive work with few simple work-related decisions or changes in work routine. He can have only occasional contact with the public, co-workers, or supervisors.

(Administrative Record at 18.) Also at the fourth step, the ALJ determined that Bell could not perform any of his past relevant work. At the fifth step, the ALJ determined that based on his age, education, previous work experience, and RFC, Bell could work at jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded that Bell was not disabled.

### B. Objections Raised By Claimant

Bell argues that the ALJ erred in three respects. First, Bell argues that the ALJ improperly concluded that his spinal condition did not meet Listing 1.04(A). Second, Bell argues that the ALJ's RFC assessment is not supported by substantial evidence. Lastly, Bell argues that the ALJ failed to properly evaluate his subjective allegations of pain and disability.

### 1. Listing 1.04(A)

Bell argues that the ALJ incorrectly determined that his spinal condition failed to meet Listing 1.04(A). The Commissioner contends that the medical evidence does not establish that Bell meets the required criteria of Listing 1.04(A). Thus, the Commissioner asserts that substantial evidence supports the ALJ's finding that Bell's back impairments do not meet the listing criteria.

Listing 1.04(A) provides:

1.04 *Disorders of the spine* (e.g. herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis,

degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or spinal cord. With:

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)[.]

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04(A). The burden is on the claimant to show that his or her impairment meets or equals a listing. *Carlson v. Asture*, 604 F.3d 589, 593 (8th Cir. 2010) (citing *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004)). Furthermore, in order to meet a listing, "'an impairment must meet all of the listing's specified criteria.'" *Id.*; *see also Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("For a claimant to show that his [or her] impairment matches a listing, it must meet *all* of the specified medical criteria.").

In considering Listing 1.04(A), the ALJ determined that:

Although previous medical evidence first demonstrated nerve root impingement in late November 2006, [Bell's] surgery on October 3, 2007 restored alignment and functioning while relieving the impingement at L5-S1. This severity of [Bell's] medical condition did not last twelve months or longer to meet the listing level requirement of 1.04(A)[.]

(Administrative Record at 16.) Bell maintains that his listing level spinal herniation was present prior to November 2006, and therefore, the ALJ's conclusion that the 12 month duration requirement was not met is incorrect.[5] Contrary to Bell's assertion, the Commissioner points out that the ALJ thoroughly considered Bell's medical records prior to November 2006, and correctly found that there was no evidence of nerve root

---

[5] The 12-month duration requirement is a general requirement applicable to all Listing levels, and requires that an impairment "must have lasted or must be expected to last for a continuous period of at least 12 months." *See* 20 C.F.R. §§ 404.1509, 404.909.

impingement prior to November 2006.[6] Moreover, Bell offers no evidence of a nerve root impingement prior to November 2006, or evidence that the nerve root impingement caused limitation of motion of the spine, motor loss, sensory or reflex loss, or positive straight-leg raising test, both sitting and supine, as required by Listing 1.04(A). Therefore, having reviewed the entire record, the Court finds that Bell has not met his burden to show that he meets Listing 1.04(A). *See Carlson*, 604 F.3d at 593; *see also Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("For a claimant to show that his [or her] impairment matches a listing, it must meet *all* of the specified medical criteria."). Accordingly, the Court determines that there is substantial evidence in the record to support the ALJ's finding that Bell does not meet the criteria of Listing 1.04(A). Even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

### 2. *RFC Assessment*

Bell argues that the ALJ's decision is not supported by substantial evidence in the record as a whole. Specifically, Bell argues that the ALJ's RFC assessment is flawed and not supported by substantial evidence. Bell maintains that under a proper RFC assessment, he should be found to be disabled.

When an ALJ determines that a claimant is not disabled, he or she concludes that the claimant retains the residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Beckley*, 152 F.3d at 1059. The ALJ is responsible for assessing a claimant's RFC, and his or her assessment must be based on all of the relevant evidence. *Guilliams*, 393 F.3d at 803; *see also Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000) (same). Relevant evidence for determining a claimant's RFC includes "'medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'"

---

[6] *See* Administrative Record at 18-19 (providing a discussion of Bell's medical records pertaining to his back problems).

*Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson*, 361 F.3d at 1070). While an ALJ must consider all of the relevant evidence when determining a claimant's RFC, "the RFC is ultimately a medical question that must find at least some support in the medical evidence of record." *Casey*, 503 F.3d at 697(citing *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004)).

Having reviewed the entire record, the Court finds that the ALJ properly considered Bell's medical records, observations of treating physicians, and Bell's own description of his limitations in making her RFC assessment for Bell.[7] *See Lacroix*, 465 F.3d at 887. Furthermore, the Court finds that the ALJ's decision is based on a fully and fairly developed record. *See Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007) (providing that an ALJ also has a duty to develop the record fully and fairly). Because the ALJ considered the medical evidence as a whole, the Court concludes that the ALJ made a proper RFC determination based on a fully and fairly developed record. *See Guilliams*, 393 F.3d at 803; *Cox*, 495 F.3d at 618.

### 3.    *Credibility Determination*

Bell argues that the ALJ failed to properly evaluate his subjective allegations of pain and disability. Bell maintains that the ALJ's credibility determination is not supported by substantial evidence. The Commissioner argues that the ALJ properly considered Bell's testimony, and properly evaluated the credibility of his subjective complaints.

When assessing a claimant's credibility, "[t]he [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; [and] (5) functional restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The absence of objective medical evidence

---

[7] *See* Administrative Record at 18-23 (providing thorough discussion of the relevant evidence for making a proper RFC determination).

to support a claimant's subjective complaints is also a relevant factor for an ALJ to consider. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001) (citation omitted). The ALJ, however, may not disregard a claimant's subjective complaints "solely because the objective medical evidence does not fully support them." *Polaski*, 739 F.2d at 1322; *see also Dukes v. Barnhart*, 436 F.3d 923, 928 (8th Cir. 2006) ("In discrediting subjective claims, the ALJ cannot simply invoke *Polaski* or discredit the claim because they are not fully supported by medical evidence.").

Instead, "'[a]n ALJ may discount a claimant's subjective complaints only if there are inconsistencies in the record as a whole.'" *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) (quoting *Porch v. Chater*, 115 F.3d 567, 572 (8th Cir. 1997)); *see also Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) ("The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole."). If an ALJ discounts a claimant's subjective complaints, he or she is required to "'detail the reasons for discrediting the testimony and set forth the inconsistencies found.'" *Ford v. Astrue*, 518 F.3d 979, 982 (8th Cir. 2008) (quoting *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003)); *see also Baker v. Apfel*, 159 F.3d 1140, 1144 (8th Cir. 1998) ("When rejecting a claimant's complaints of pain, the ALJ must make an express credibility determination, must detail reasons for discrediting the testimony, must set forth inconsistencies, and must discuss the *Polaski* factors."). Where an ALJ seriously considers, but for good reason explicitly discredits a claimant's subjective complaints, the Court will not disturb the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001) (citing *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996)); *see also Guilliams*, 393 F.3d at 801 (explaining that deference to an ALJ's credibility determination is warranted if the determination is supported by good reasons and substantial evidence); *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) ("If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, we will normally defer to the ALJ's credibility determination."). "'The credibility of a claimant's

subjective testimony is primarily for the ALJ to decide, not the courts.'" *Wagner*, 499 F.3d at 851 (quoting *Pearsall*, 274 F.3d at 1218).

In her decision, the ALJ determined that:

> [Bell] alleged sharp, stabbing pains in his left hip ran down his leg [and] impaired his ability to stand, walk or ride in a car for long distances. He indicated difficulties putting on pants, socks and shoes, standing to cook supper or doing dishes at the sink. [Bell] maintained that his wife did most of the household chores, including mowing the lawn, and his medical problems kept him from hobbies such as working on cars in his garage or playing sports. In forms completed for disability determination services, Mr. Bell acknowledged helping his wife cook and clean, cooking for his mother and grandmother, completing personal hygiene care, making simple meals, dusting, cleaning laundry/folding clothes, and shopping with his wife for groceries; although he alleged he could not stand very long, [Bell] voiced an ability to walk for about one hour, follow instructions very well, and get along with authority figures. Mr. Bell claimed his mental condition worsened over the course of the disability determination process to the point that he did not want to be around friends or grandchildren, do any activities with his family, or even hold the family dog. [Bell] did relay to treating sources recently, however, that he is feeling much better since the last spinal fusion surgery and has even shoveled snow in March 2008. [Bell] has not sought counseling for mental health issues, but has been treated conservatively with medication despite his recitation of debilitating psychological difficulties. [Bell] was also able to work for about six months during the relevant period at White Glove Cleaning, where he would assist his wife with housekeeping duties, albeit part-time. Mr. Bell did not report his employment on work history forms for disability determination purposes, and he testified that his wife was paid for his work, eliminating an earnings record in his name for this employment. At the hearing, [Bell] testified that prescription pain medication, such as Percocet, helps immensely but includes side affects of seeing shadows move, inability to read the paper, and blurred vision. Since his last back surgery, [Bell] testified he has not had treatment but just medication management.

> While the inconsistent information provided by [Bell] may not
> be the result of a conscious intention to mislead, nevertheless
> the inconsistencies suggest that the information provided by
> [Bell] generally may not be entirely reliable. Therefore,
> [Bell's] credibility is eroded.

(Administrative Record at 21-22.)

It is clear from the ALJ's decision that she thoroughly considered and discussed Bell's treatment history, medical history, functional restrictions, effectiveness and side effects of medications, and activities of daily living in making her credibility determination. Thus, having reviewed the entire record, the Court finds that the ALJ adequately considered and addressed the *Polaski* factors in determining that Bell's subjective allegations of disability were not credible. *See Johnson*, 240 F.3d at 1148; *see also Goff*, 421 F.3d at 791 (an ALJ is not required to explicitly discuss each *Polaski* factor, it is sufficient if the ALJ acknowledges and considers those factors before discounting a claimant's subjective complaints); *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each *Polaski* factor as long as the analytical framework is recognized and considered. *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996)."). Accordingly, because the ALJ seriously considered, but for good reasons explicitly discredited Bell's subjective complaints, the Court will not disturb the ALJ's credibility determination. *See Johnson*, 240 F.3d at 1148. Even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

## VI. CONCLUSION

The Court finds that the ALJ properly determined that Bell did not meet Listing 1.04(A); the ALJ's RFC assessment is supported by substantial evidence in the record as a whole; and the ALJ properly determined Bell's credibility with regard to his subjective complaints of pain and disability. Accordingly, the Court determines that the ALJ's decision is supported by substantial evidence and shall be affirmed.

## VII. ORDER

For the foregoing reasons, it is hereby **ORDERED**:

1.     The final decision of the Commissioner of Social Security is **AFFIRMED**;

2.     Plaintiff's Complaint (docket number 1) is **DISMISSED** with prejudice; and

3.     The Clerk of Court is directed to enter judgment accordingly.

DATED this __15th__ day of June, 2011.

JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA